1 BENJAMIN B. WAGNER
United States Attorney
2 HEATHER MARDEL JONES
Assistant United States Attorney
3 United States Courthouse
2500 Tulare Street, Suite 4401
4 Fresno, California 93721
(559) 497-4000 Telephone
5 (559) 497-4099 Facsimile

6 Attorneys for the United States



FILED

AUG 1 5 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
     DEPUTY CLERK

8 IN THE UNITED STATES DISTRICT COURT

9 EASTERN DISTRICT OF CALIFORNIA

11 UNITED STATES OF AMERICA, ) 1:12-CV-01309-LJO-DLB
)
12 Plaintiff, ) ORDER REGARDING CLERK'S
) ISSUANCE OF WARRANT FOR
13 v. ) ARREST OF ARTICLES *IN*
) *REM*
14 APPROXIMATELY $25,090.00 IN U.S. )
CURRENCY, )
15 )
Defendant. )
16 _____ )

17   WHEREAS, a Verified Complaint for Forfeiture *In Rem* has been filed on August 10,

18 2012, in the United States District Court for the Eastern District of California, alleging that

19 the defendant approximately $25,090.00 in U.S. Currency (hereafter "defendant currency")

20 is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) for one or more

21 violations of 21 U.S.C. §§ 841 *et seq.*;

22   And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In*

23 *Rem* and the affidavit of Drug Enforcement Administration Special Agent Michael W.

24 Tighe, there is probable cause to believe that the defendant currency so described

25 constitutes property that is subject to forfeiture for such violation(s), and that grounds for

26 the issuance of a Warrant for Arrest of Articles *In Rem* exist, pursuant to Rule G(3)(b)(i) of

27 the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

28   IT IS HEREBY ORDERED that the Clerk for the United States District Court,

Eastern District of California, shall issue a Warrant for Arrest of Articles *In Rem* for the defendant currency.

Dated: 8/15/12

*/s/ Jennifer L. Thurston*
~~GARY S. AUSTIN~~ Jennifer L. Thurston
United States Magistrate Judge

**AFFIDAVIT OF MICHAEL W. TIGHE**

I, Michael W. Tighe, being first duly sworn under oath, depose and say:

1.   I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed by the DEA since January, 2005. Since August, 2005, I have been assigned to the DEA's Fresno Resident Office in Fresno, California. As part of my training, I received sixteen weeks of training in the area of narcotics investigations at the DEA Justice Training Center at Quantico, Virginia. I have furthermore received specialized training in the investigation of basic telecommunications exploitation and internet telecommunications exploitation. I have worked as a case agent and assisted other agents and officers in their investigations on cases involving violations of Title 21, United States Code, Section 841(a)(1), the manufacture of, distribution of and possession with intent to distribute controlled substances; and Title 21, United States Code, Section 846, conspiracy to commit the foregoing. Specifically, those investigations have focused on the manufacture and distribution of marijuana, methamphetamine, heroin and cocaine. I am familiar with, and have participated in, all of the conventional investigative methods, including, but not limited to, electronic surveillance, visual surveillance, questioning of witnesses, search warrants, confidential informants, pen registers, trap and trace, and the use of undercover agents. I have provided testimony before the Federal Grand Jury and the United States District Court in the Eastern District of California. Through my training and experience, I have become acquainted with the identification of various controlled substances. I have also become acquainted with the various methods used by individuals to possess, transport, and sell controlled substances in violation of federal law. The facts set forth in this affidavit are known to me as a result of my participation in this investigation and speaking with other law enforcement officials.

2.   This affidavit is made in support of a warrant for arrest of defendant approximately $25,090.00 in U.S. Currency ("the defendant currency"). The defendant

1 currency constitutes a thing of value furnished or intended to be furnished in exchange for a
2 controlled substance or listed chemical, and is proceeds traceable to such an exchange, and
3 was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et*
4 *seq.*

5     3.     The facts set forth in this affidavit are known to me as a result of reviewing
6 official reports, documents, and other evidence obtained as a result of the investigation, and
7 through conversations with other agents and detectives who have participated in this
8 investigation and I have determined the following:

9     4.     On March 30, 2012, a California Highway Patrol (CHP) sergeant initiated a
10 traffic stop on a gray Toyota Prius, bearing California license plate number 6UGF101,
11 (registered owner is Steven Jacob, 529 W. Santa Paula Street, Santa Paula, CA 93060) for
12 traveling at a high rate of speed with no rear license plate. The CHP sergeant made contact
13 with the driver and sole occupant, Steven LaPointe (hereafter "LaPointe"), from the right
14 side of the vehicle. When the driver rolled the window down, the sergeant immediately
15 encountered the strong odor of marijuana and air freshener coming from within the vehicle.
16 LaPointe apologized for going too fast. LaPointe then provided the sergeant his driver's
17 license. As LaPointe reached into the glove compartment, the sergeant observed a license
18 plate inside the glove compartment and several air fresheners hanging from the rear view
19 mirror. When asked if there was marijuana located inside the vehicle, LaPointe admitted
20 that there was some personal-use marijuana behind his seat and that he had a marijuana
21 card. When asked for the marijuana card, LaPointe opened the rear cargo area where the
22 sergeant observed a large plastic oblong shaped container, approximately 20 gallons in size.

23     5.     The sergeant placed LaPointe in the rear seat of his patrol unit to conduct a
24 probable cause search of the vehicle where he observed a small plastic container that had
25 five separate compartments. Each compartment was labeled with a different strain of
26 marijuana and each compartment appeared to contain marijuana. Next to the container
27 was a large glass marijuana pipe. In the rear cargo area of the vehicle, the sergeant opened
28 the large container showed to him by LaPointe. The container had the smell of marijuana

Affidavit of Michael W. Tighe

1 and there was marijuana debris at the bottom of the container. The sergeant further
2 located an electronic safe underneath the rear seat covered with a jacket. When asked to
3 whom the safe belonged, LaPointe stated that the safe was his and that he had the
4 combination to the safe. When asked to open the safe, LaPointe refused to open the safe
5 and then stated that the safe was not his but a friend of his named Collin. The sergeant
6 asked for Collin's phone number so he could call him to ascertain if the safe was his.
7 LaPointe refused to give the sergeant Collin's telephone number.

8       6.     The CHP sergeant began to write a citation for LaPointe when another CHP
9 officer arrived on scene. At this point, LaPointe stated that the safe belonged to him and
10 Collin but that he could not open the safe because he did not have the key. LaPointe stated
11 that there was nothing illegal in the safe and that there was no money in the safe.
12 LaPointe stated that the safe only contained items related to play his music such as thumb
13 drives and CDs. The sergeant observed that LaPointe was demonstrating agitated behavior
14 that continued to progress and become belligerent when the sergeant informed LaPointe of
15 his intend to seize the safe and seek a search warrant to open the safe. The sergeant
16 completed the citation and provided a receipt for seized property along with the citation to
17 LaPointe. LaPointe signed the citation but refused to initial the seized property receipt.
18 LaPointe was provided a copy of the property receipt and a business card. LaPointe then
19 returned to his vehicle. The CHP sergeant returned to the CHP office with the safe.

20       7.     Upon arrival as the CHP office, a canine and handler conducted a sniff search
21 of the safe in an area of the office that was previously deemed free of any odor of illegal
22 drugs. When the canine was introduced to the room, the canine showed a positive alert to
23 the odor of illegal drugs on the safe. Thereafter, a search warrant was then completed and
24 was approved and signed by a Fresno County Superior Court judge. The safe was then pried
25 open to reveal a blue University of Notre Dame bank bag that contained seventeen bundles
26 of currency. The initiating CHP sergeant could smell the odor of marijuana coming from
27 the currency upon its removal from the money bag. Each bundle of current was held
28 together with rubber bands. The bundles of currency were then placed in the area of the

3

Affidavit of Michael W. Tighe

1  office that had been previously cleared of any odor of illegal drugs. The original canine was
2  now unavailable, so another CHP canine handler utilized his narcotic detecting canine to
3  conduct a sniff of the office where the currency was concealed. This canine showed a
4  positive alert to the odor of illegal drugs where the currency was concealed. The currency
5  was then counted to a total of approximately $25,190 in the following denominations: $10 x
6  20; $20 x 707; $50 x 27; $100 x 94. One of the $100 bills was determined to be counterfeit
7  by Bank of America.

8.  The CHP sergeant contacted LaPointe via his cell phone and advised LaPointe that the safe was opened after he secured a warrant and no music related items were located in the safe. LaPointe admitted that he knew there were no music related items in the safe, that there was only money. LaPointe then refused to talk any further about the money.

9.  On or about June 19, 2012, Steven Lapointe filed a claim to the defendant currency alleging that the defendant currency is derived from savings from employment as a personal football coach and private guitar teacher. Lapointe further claims that he recently sold a truck which represents a bulk of the defendant currency, together with cash gifts he and his wife received as wedding gifts. Lapointe alleges that this money was to be used as gambling money for March Madness in the Lake Tahoe, California area.

10. Based on the evidence presented in this affidavit, it is my opinion that the currency described in this Affidavit are proceeds from criminal offenses or used to facilitate such criminal offenses, as described with more particularity above.

11. Based on the above, I believe there is probable cause to indicate that the defendant currency constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, and is proceeds traceable to such an exchange, and was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq.*, and that a Warrant for Arrest of Articles *In Rem*, pursuant to the

///

///

1  Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule
2  G(3)(b)(i), be issued for the defendant currency.

*[signature]*
MICHAEL W. TIGHE
Special Agent
Drug Enforcement Administration

Sworn to and Subscribed before me
this 15th day of August 2012.

*[signature]* Jennifer I. Thurston
~~Honorable Gary S. Austin~~
United States Magistrate Judge

Reviewed and approved as to form.

*[signature]*
Heather Mardel Jones
Assistant U.S. Attorney

Affidavit of Michael W. Tighe
5